1  THOMAS W. FALVEY, SBN 65744
   thomaswfalvey@gmail.com
2  MICHAEL H. BOYAMIAN, SBN 256107
   mike.falveylaw@gmail.com
3  ARMAND R. KIZIRIAN, SBN 293992
   armand.falveylaw@gmail.com
4  **LAW OFFICES OF THOMAS W. FALVEY**
   550 North Brand Boulevard, Suite 1500
5  Glendale, California 91203
   Telephone: (818) 547-5200
6  Facsimile: (818) 500-9307

7  ANDRE. JARDINI, SBN 71335
   aej@kpclegal.com
8  K.L. MYLES, SBN 243272
   klm@kpclegal.com
9  **KNAPP, PETERSEN & CLARKE**
   550 North Brand Boulevard, Suite 1500
10 Glendale, California 91203-1922
   Telephone:   (818) 547-5000
11 Facsimile:   (818) 547-5329

12 STEPHEN M. RINKA, SBN 219626
   stephen.rinka@gmail.com
13 **THE RINKA LAW FIRM**
   433 N. Camden Dr., Suite 600
14 Beverly Hills, CA 90210
   Telephone: (310) 556-9653
15 Facsimile: (310) 579-8768

16 Attorneys for Plaintiff HUNG V. VU, D.D.S.,
   A PROFESSIONAL DENTAL CORP., on behalf
17 of itself and all persons and entities similarly situated

18                **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20 | HUNG V. VU, D.D.S., A PROFESSIONAL DENTAL CORP., d/b/a Vu Orthodontics, on behalf of itself and all persons and entities similarly situated | Case No.: |

|  | **CLASS ACTION** |
|  | **COMPLAINT FOR:** |
| Plaintiff, | 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227;** |
| vs. |  |
| I CARE CREDIT, LLC, d/b/a iCare Financial; and DOES 1 – 10, inclusive; | 2. **CONVERSION;** |
|  | 3. **INJUNCTIVE RELIEF.** |
| Defendants. | **DEMAND FOR JURY TRIAL** |
|  | [Fed. R. Civ. P. 8, 10, 23, 38] |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.    In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "unrestricted telemarketing…. can be an intrusive invasion of privacy…"  47 U.S.C. §227, Congressional Statement of Finding #5.  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax").  See 47 U.S.C. §227.

2.    In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by passing the Junk Fax Prevention Act of 2005.  As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that advises recipients of their right to stop future junk faxes and how to exercise that right.

3.    Plaintiff Hung V. Vu, D.D.S., A Professional Dental Corp. d/b/a Vu Orthodontics ("Plaintiff" or "Vu Orthodontics"), on behalf of itself and all persons and entities similarly situated, files this complaint against the Defendant I Care Credit, LLC d/b/a iCare Financial ("iCare" or "Defendants"), for its violation of federal telemarketing law.

**THE PARTIES**

4.    Plaintiff Vu Orthodontics, is a California company with its principal place of business at 16027 Brookhurst St., Suite K, Fountain Valley, California 92708.

5.    I Care Credit, LLC d/b/a iCare Financial ("iCare" or "Defendants") is a corporation duly organized under the laws of Georgia with a principal place of business at 975 Cobb Place Blvd., NW, Kennesaw, Georgia.

**JURISDICTION AND VENUE**

6.    The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331.  *See Mims v. Arrow Financial Services, Inc.*, 565 U.S. 368 (2012).

CLASS ACTION COMPLAINT

7. The Court has personal jurisdiction over Defendants because they regularly conduct business within the state of California and because Defendants intentionally sent facsimile transmissions that are subject of this lawsuit to recipients within the state of California.

8. Venue in this Judicial District is proper under 28 U.S.C. §1391(b), and assignment to the San Francisco or Oakland Division is proper pursuant to Local Rule 3-2(d), because a substantial number of the members of the class alleged herein received facsimile transmissions from Defendants, that did not comply with the requirements of the TCPA, within this District and within the Division and Courthouse in which this action has been commenced.

## THE LEGAL BASIS OF THE CLASS CLAIMS

9. This class action arises from the violation by iCare of federal law prohibiting privacy violations *via* invasive telemarketing practices.

10. The claims of the Plaintiff, and the class of persons it seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

11. The TCPA was also enacted to protect the property rights of the recipients of unsolicited facsimile advertisements.

12. The TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services. See 47 U.S.C. §227(b)(1)(C).

13. Faxes sent via a computer are also subject to this prohibition. See 47 CFR 64.1200(a)(3) (no person or entity may [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine . . . ")

14. The TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser had an established business relationship, must include language on the facsimile which clearly informs the recipient that they may request that future facsimiles cease,

CLASS ACTION COMPLAINT

and that failure to remove the consumer's facsimile from the telemarketer's database within thirty days is itself a violation of the TCPA.  These requisites are referred to as "Compliant Opt Out Notice."  47 U.S.C. §227(b)(2)(D) provides:

> (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if—
>> (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;
>> (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
>> (iii) the notice sets forth the requirements for a request under subparagraph (E);
>> (iv) the notice includes—
>>> (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and
>>> (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;
>> (v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and
>> (vi) the notice complies with the requirements of subsection (d) of this section;

The Federal Communications Commission ("FCC") has implemented the Opt Out Requirements at 47 CFR § 64.1200, requiring the following for an Opt Out Notice to be complaint with federal telemarketing law:

////

- 4 -

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if—(A) The notice is clear and conspicuous and on the first page of the advertisement; (B) **The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(3)(v) of this section is unlawful**; (C) The notice sets forth the requirements for an opt-out request under paragraph (a)(3)(v) of this section; (D) The notice includes—(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and (2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and (E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

47 CFR § 64.1200(a)(3)(iii).

15.   If a fax advertiser does not include Compliant Opt Out Notice, that advertiser is precluded from raising an "Established Business Relationship" ("EBR") defense in any litigation arising from that fax advertising.  47 CFR § 64.1200(a)(3)(i-iii).

16.   In fact, failing to provide a Compliant Opt Out Notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating regulations.  The TCPA statute provides for a private right of

CLASS ACTION COMPLAINT

1   action "based on a violation of ... the regulations prescribed" under the TCPA.

2   *See* 47 U.S.C. § 227(b)(3)(A).  *See also Mims v. Arrow Financial Services, LLC*,

3   132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for a

4   violation of the FCC's implementing regulations.").

5        17.   The TCPA, 47 U.S.C. §227(b)(3), provides a private right of action,

6   as follows:

7
                A person or entity may, if otherwise permitted by the laws
8               or rules of court of a State, bring in an appropriate court of
                that State, (A) an action based on a violation of this
9               subsection or the regulations prescribed under this
                subsection to enjoin such violation, (B) an action to recover
10              for actual monetary loss from such a violation, or to
                receiver $500 in damages for each violation, whichever is
11              greater, or (C) both such actions.
12

13       18.   Plaintiff brings this action individually and as the representative of

14  all members of a class, nationwide, pursuant to Rule 23 of the Federal Rules of

15  Civil Procedure.

16  **FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE**

17  **PLAINTIFF**

18       19.   On January 7, 2016, and on January 12, 2016, iCare and/or its agents

19  transmitted unsolicited facsimile advertisements to Plaintiff and to thousands of

20  other consumers in California and elsewhere throughout the United States.

21  Copies of the advertising content sent to Plaintiff are attached as Exhibit 1.

22       20.   Plaintiff did not give express or implied prior invitation or

23  permission for the transmission of the advertisements sent to Plaintiff via

24  facsimile by iCare.

25       21.   Plaintiff did not give its prior express consent for the transmission of

26  the advertisements sent to Plaintiff via facsimile by iCare.  Plaintiff also did not

27  have a preexisting "Established Business Relationship" with iCare within the

28  meaning of 47 CFR § 64.1200(a)(3)(i-iii).

22.    The facsimiles did not contain a Compliant Opt Out Notice, in that the facsimile advertisements do not contain a clear and conspicuous notice informing the recipient that it may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply within 30 days is unlawful. In other words, iCare failed to advise Plaintiff and other similarly situated recipients that it will comply with the opt-out request within 30 days.

## CLASS ALLEGATIONS

23.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

24.    Within the past four years, iCare and/or its agents has engaged in widespread advertising via unsolicited facsimile transmission in violation of the TCPA.

25.    The nature of the facsimile advertising done by iCare was mass marketing, designed to solicit new customers.

26.    The widespread nature of the fax marketing campaigns at issue is evidenced by the fact that iCare is a Georgia based company and is sending fax advertisements to California companies, such as Plaintiff Vu Orthodontics, and Plaintiff is aware that Defendant iCare has sent fax advertisements to companies in other states as well.

27.    Defendant iCare's direct involvement in the fax campaign is indicated by the notice on the advertisements, "Fast Facts About iCare Financial" and www.iCareFinancialCorp.com is a domain name registered to iCare.

28.    Defendant iCare profited by and received the benefits of marketing its products of the fax advertisements in the form of revenue, and name/brand recognition and promotion.

////

CLASS ACTION COMPLAINT

29.    As the entity whose goods are being advertised and that benefits from the fax ads, iCare is liable for the fax advertising. The TCPA makes it unlawful to "send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).

30.    The Federal Communications Commission has promulgated 47 C.F.R. §64.1200(a)(3), which defines a "sender" as, "[T]he person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(8).

31.    Prior to codification, this principle had been established by an official FCC interpretation of the TCPA entitled, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995), which stated, "[T]he entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements."

32.    Defendant iCare and/or its agents carelessly and recklessly failed to obtain prior express invitation or permission from Plaintiff and class members, and failed to take all steps necessary to ensure that its facsimile marketing campaign was compliant with telemarketing law.

33.    To the extent facsimile advertisements were transmitted by iCare to consumers who had given consent, or had an established business relationship with iCare, the facsimile advertisements are still in violation of the TCPA as they did not contain the Compliant Opt Out Notice required by law, making individual issues of consent legally irrelevant.

////

////

////

////

- 8 -

34.   Class Definition: The class of persons represented by Plaintiff is composed of:

> "All persons and/or entities within the United States to whom iCare sent, or caused to be sent, facsimile advertisements promoting iCare and its products and services, at any time within four years prior to the filing of the instant Complaint."

35.   The class as defined above is identifiable by phone records, fax transmittal records, and fax number databases, used by iCare and/or its agents, in transmitting its unsolicited facsimile advertisements.

36.   The potential class members number in the thousands and constitute a class so numerous that joinder of all class members is impracticable. Plaintiff is a member of the class.

37.   There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a.   Whether iCare violated the TCPA and FCC promulgating regulations by engaging in illegal fax advertising;

    b.   Whether the facsimiles sent by iCare to class members constitute unsolicited advertisements;

    c.   Whether the facsimile advertisements at issue contained a compliant Opt Out Notice; and

    d.   Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of iCare's actions.

38.   Plaintiff's claims are typical of the claims of the class.

39.   Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class, it will fairly and adequately protect the interests of the class, and it is represented by counsel skilled and experienced in class actions, particularly in the prosecution of class actions enforcing the TCPA.  Proposed class counsel have the necessary

- 9 -

CLASS ACTION COMPLAINT

resources, experience and ability to prosecute this case on a class action basis. Co-lead counsel have considerable experience representing clients in complex business disputes and have significant experience as class counsel in federal and state courts.

40.   The actions of iCare are generally applicable to the class as a whole and to Plaintiff.

41.   Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by iCare and/or its agents.

42.   The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

43.   Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

44.   Plaintiff is capable of and is willing to represent the other members of the class.

## CAUSES OF ACTION
## COUNT I: VIOLATION OF THE TCPA

45.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

46.   Defendant iCare, and/or its agents, negligently or willfully caused unsolicited facsimile advertisements to be sent to Plaintiff and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

////

CLASS ACTION COMPLAINT

47.    By causing unsolicited facsimile advertisements to be sent to the class, iCare violated the privacy rights of class members.

48.    By causing unsolicited facsimile advertisements to be sent to the class, iCare caused class members to sustain property damage and cost in the form of paper, toner, and/or ink.

49.    By causing unsolicited facsimile advertisements to be sent to the class, iCare interfered with the class members use of their property as class members facsimile machines were encumbered by the transmission of iCare's unsolicited facsimile advertisements.

50.    By causing unsolicited facsimile advertisements to be sent to the class, iCare caused the facsimile machines of class members to be encumbered by the transmission of unsolicited facsimiles.

51.    Defendant iCare failed to provide the requisite notice on its advertisements of a recipient's right to cease receiving such advertisements and a cost free mechanism to make such request.

52.    Failure to provide opt out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating regulations.  The TCPA statute provides for a private right of action "based on a violation of ... the regulations prescribed" under the TCPA. See 47 U.S.C. § 227(b)(3)(A).  *See also Mims v. Arrow Financial Services*, LLC, 132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for a violation of the FCC's implementing regulations.").

53.    The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA.  In addition, Plaintiff is informed and believes, and upon such information and belief avers, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the TCPA.

## COUNT II: CONVERSION

54.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55.    Plaintiff brings the Second Cause of Action on behalf of itself and a class of similarly situated persons and against iCare.

56.    By sending unsolicited faxes to Plaintiff and the other Class members, iCare improperly and unlawfully converted their fax machines, phone lines, computers, bandwidth, electricity, paper, toner, and/or ink to iCare's own use.  Defendant iCare also converted Plaintiff's employees' time to its own use.

57.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, phone lines, computers, bandwidth, electricity, paper, toner, ink, and/or employee time.

58.    By sending the unsolicited faxes, iCare permanently misappropriated the Class members' fax machines, phone lines, computers, bandwidth, electricity, paper, toner, ink, and/or employee time to their own use.  Such misappropriation was wrongful and without authorization.

59.    Defendant iCare knew or should have known that its misappropriation of Plaintiff's and Class members' fax machines, phone lines, computers, bandwidth, electricity, paper, toner, ink, and/or employee time was wrongful and without authorization.

60.    Plaintiff and the other Class members were deprived of the use of their fax machines, phone lines, computers, bandwidth, electricity, paper, toner, ink, and/or employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from iCare.

////

////

CLASS ACTION COMPLAINT

61.    Each of iCare's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing iCare's illegal faxes.  Defendant iCare knew or should have known employees' time is valuable to Plaintiff.

## COUNT III: INJUNCTIVE RELIEF

62.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.    The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

64.    The Plaintiff, acting on behalf of the Class, respectfully petitions the Court to order iCare to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of itself and the other members of the class, prays for the following relief:

1.    For injunctive relief in accordance with subsection (b)(3)(A) of the TCPA, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the act and, thereby, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending any further unsolicited faxed advertisements to any person or entity;

2.    That this Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff' counsel as counsel for the class;
////

- 13 -
CLASS ACTION COMPLAINT

3. In accordance with subsection (b)(3)(B) of the TCPA, that the named Plaintiff and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by iCare or $1,500 for each willful violation of the TCPA, in a total amount not less than $5,000,000.00, exclusive of interest and costs, or according to proof.

4. That the Court enter an appropriate order enjoining iCare, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom Defendants have transmitted unsolicited facsimile advertisements;

5. For prejudgment interest;

6. For costs of suit herein;

7. For reasonable attorneys' fees;

8. For punitive damages; and

9. That the named Plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

////
////
////
////
////
////
////
////
////
////
////

CLASS ACTION COMPLAINT

1

## PRESERVATION OF EVIDENCE DEMAND

2    Defendant iCare or its agents have custody and control of the business

3    records and other information necessary to identify the members of the class

4    including names and telephone facsimile numbers. Unless immediate injunctive

5    relief is ordered, it is feared that iCare, or its agents, will alter, erase, delete,

6    destroy or otherwise dispose of the records in their possession which are

7    necessary to identify each recipient of the unsolicited facsimile advertisements

8    being sent by iCare. For this reason, the Plaintiff demands that iCare, its agents,

9    or anyone acting on its behalf, refrain from altering, deleting or destroying any

10    documents or records which could be used to identify the members of the class.

11    Dated: February /6, 2016

12

LAW OFFICES OF THOMAS W. FALVEY
KNAPP PETERSEN & CLARKE
THE RINKA LAW FIRM

13

14    By: _____

15    THOMAS W. FALVEY
Attorneys for Plaintiff
HUNG V. VU, D.D.S., A
PROFESSIONAL DENTAL CORP.

16

17

## DEMAND FOR JURY TRIAL

18

19    PLAINTIFF HUNG V. VU, D.D.S., A PROFESSIONAL DENTAL

20    CORP., and the Proposed Class hereby demand a trial by jury on all issues so

21    triable.

22    Dated: February /6, 2016

23

LAW OFFICES OF THOMAS W. FALVEY
KNAPP PETERSEN & CLARKE
THE RINKA LAW FIRM

24    By: _____

25    THOMAS W. FALVEY
Attorneys for Plaintiff
HUNG V. VU, D.D.S., A
PROFESSIONAL DENTAL CORP.

26

27

28

- 15 -
CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION

I hereby attest that the concurrence in the filing of this document has been obtained from Thomas W. Falvey of the Law Offices of Thomas W. Falvey, Attorneys for Plaintiff.


Dated:  February 16, 2017          LAW OFFICES OF THOMAS W. FALVEY


                                   By:   /s/ Armand R. Kizirian
                                            Armand R. Kizirian
                                   Attorneys for Plaintiff HUNG V. VU,
                                   D.D.S., A PROFESSIONAL DENTAL
                                   CORP.

CLASS ACTION COMPLAINT

Exhibit "1"

## Dental Patient Financing

# Why are you still turning patients away that don't qualify for Care Credit?

## We APPROVE all your patients for financing with <u>No Credit Check!</u>

### Fast Facts About **iCare Financial**.

- ✔ Offer patients financing with NO CREDIT CHECK and ZERO RISK. It's a fact; most patients will not even apply for financing when their credit is going to be checked.

- ✔ <u>PAYMENTS</u> are <u>DIRECT DEPOSITED</u> into your practice account within <u>2 BUSINESS DAYS.</u>

- ✔ Your patients are INSTANTLY APPROVED and can get the treatment at the time of their visit.

- ✔ Run a $3,000 case through and you receive the full $3,000 back -- No percentage or other charges taken off the top for the work you have performed.

- ✔ Your practice is 100% GUARANTEED ON ALL PAYMENTS with no responsibility or recourse to you.

- ✔ Patients receive a non-compounding flat administrative fee. Patients love a program with no spikes and no hidden fees!

- ✔ Patients can add ADDITIONAL TREATMENTS to an iCare plan at any time.

- ✔ iCare dental providers run an additional $80,000 to $350,000 a year! Where will you spend your additional funds? · Purchase new equipment?  · Save for retirement?  · Pay off loans?
  · Staff raises?           · Expand your practice?

Featured In: **Dentistry IQ**        HealthLeaders *Media*    

# Get your practice set up today
# Don't delay Call: **888-796-4659**

You can also visit us online at **www.iCareFinancialCorp.com** and see what your colleagues have to say about this state of the art patient financing program.

To Opt-Out or unsubscribe please call (855) 595-3765 and enter your fax #.  Or you may fax us back with your fax # to request for removal to fax # 855-974-4106.

## Dental Patient Financing

# Why are you still turning patients away that don't qualify for Care Credit?

### We APPROVE all your patients for financing with <u>No Credit Check!</u>

### Fast Facts About iCare Financial.

✔ Offer patients financing with NO CREDIT CHECK and ZERO RISK. It's a fact; most patients will not even apply for financing when their credit is going to be checked.

✔ <u>PAYMENTS</u> are <u>DIRECT DEPOSITED</u> into your practice account within <u>2 BUSINESS DAYS.</u>

✔ Your patients are INSTANTLY APPROVED and can get the treatment at the time of their visit.

✔ Run a $3,000 case through and you receive the full $3,000 back -- No percentage or other charges taken off the top for the work you have performed.

✔ Your practice is 100% GUARANTEED ON ALL PAYMENTS with no responsibility or recourse to you.

✔ Patients receive a non-compounding flat administrative fee. Patients love a program with no spikes and no hidden fees!

✔ Patients can add ADDITIONAL TREATMENTS to an iCare plan at any time.

✔ iCare dental providers run an additional $80,000 to $350,000 a year! Where will you spend your additional funds? · Purchase new equipment?  · Save for retirement?  · Pay off loans?
· Staff raises?                  · Expand your practice?

Featured In:  Dentistry IQ        HealthLeaders Media     

# Get your practice set up today

# Don't delay Call: **888-796-4659**

You can also visit us online at **www.iCareFinancialCorp.com** and see what your colleagues have to say about this state of the art patient financing program.

To Opt-Out or unsubscribe please call (855) 595-3765 and enter your fax #.  Or you may fax us back with your fax # to request for removal to fax # 855-974-4106.