UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 17-04609 RAO                              Date:   November 4, 2022
Title:     Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

Present:        The Honorable   **ROZELLA A. OLIVER, U.S. MAGISTRATE JUDGE**

          Donnamarie Luengo                              N/A
             Deputy Clerk                         Court Reporter/Recorder

     Attorneys Present for Plaintiff(s):       Attorneys Present for Defendant(s):

             N/A                                          N/A

**Proceedings:**      (In Chambers) **ORDER GRANTING AMENDED MOTION FOR**
                      **FINAL APPROVAL OF CLASS ACTION SETTLEMENT [91] AND**
                      **GRANTING-IN-PART AMENDED MOTION FOR ATTORNEYS'**
                      **FEES, COSTS, AND SERVICE AWARD [91-1]**

     This is a class action brought by Plaintiff Hung V. Vu, D.D.S. ("Plaintiff") against
Defendant I Care Credit, LLC ("Defendant") for alleged violations of the Telephone Consumer
Protection Act (TCPA).  The case settled on November 14, 2017, before a mediator from the
Central District's Mediation Panel.  Dkt. No. 50.  On June 17, 2019, the Court preliminarily
approved the class action settlement.  Dkt. No. 58.

     Currently before the Court is Plaintiff's Amended Motion for Final Approval of Class
Action Settlement ("Motion for Final Approval").  Dkt. No. 91.  Plaintiff also filed an Amended
Motion for Attorneys' Fees, Costs, and Service Award ("Motion for Fees").  Dkt. No. 91-1.  In
support of the motions, Plaintiff filed the following declarations: the Amended Declaration of
Michael H. Boyamian in Support of Motion for Final Approval ("Boyamian Declaration"), Dkt.
No. 91-2; the Declaration of Andre E. Jardini in Support of Motion for Final Approval ("Jardini
Declaration"), Dkt. No. 91-3; the Declaration of Thomas W. Falvey in Support of Motion for Final
Approval ("Falvey Declaration"), Dkt. No. 91-4; the Declaration of Stephen M. Rinka in Support
of Motion for Final Approval ("Rinka Declaration"), Dkt. No. 91-5; the Declaration of Hung V.
Vu, D.D.S. in Support of Motion for Final Approval ("Vu Declaration"), Dkt. No. 91-6; and the
Declaration of Evelin Reyes Regarding Notice and Settlement Administration ("Reyes
Declaration"), Dkt. No. 91-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 17-04609 RAO | Date: | November 4, 2022 |
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC | | |

        The Court held a final approval and fairness hearing on October 26, 2022, at 10 a.m.  Dkt. No. 93.  The hearing was held by Zoom webinar, and the undersigned's courtroom was open to the general public.  No class members appeared at the hearing and there have been no objections to the class action settlement.  The Court GRANTS the Motion for Final Approval and GRANTS-IN-PART the Motion for Fees.

**I.    BACKGROUND**

**A.    Plaintiff's Claims**

        Plaintiff brought this putative class action pursuant to the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*.  Compl. ¶¶ 1-3.  Plaintiff alleged that Defendant transmitted fax advertisements to Plaintiff on January 7, 2016 and January 12, 2016.  *Id.* ¶ 19 & Ex. 1.  Plaintiff did not give prior consent and did not have a preexisting established business relationship with Defendant.  *Id.* ¶ 21.  The fax advertisement did not contain a TCPA compliant opt-out notice because Defendant failed to advise Plaintiff and other recipients that it would comply with the opt-out request within 30 days.  *Id.* ¶ 22.  As to the class, Plaintiff alleged that Defendant engaged in widespread advertising via unsolicited fax transmission in violation of the TCPA.  *Id.* ¶¶ 24-26.  Plaintiff alleged that Defendant failed to obtain prior consent from recipients and, to the extent fax advertisements were transmitted to consumers who had given consent or had an established business relationship, Defendant failed to provide compliant opt-out notices.  *Id.* ¶¶ 32-33.  Plaintiff requested statutory and actual damages, injunctive relief, costs of suit, and attorneys' fees.  *See id.* at 13-14.

**B.    Procedural History**

        This case was initially filed in the Northern District of California.  *See* Dkt. No. 1.  Defendant moved to dismiss the action for improper venue or, in the alternative, to transfer to a proper venue.  Dkt. No. 16.  The parties filed their Joint Case Management Statement on June 15, 2017.  Dkt. No. 23.  On June 22, 2017, Defendant's motion was granted and the action was transferred to the Central District of California.  Dkt. No. 29.  Upon transfer, the case was assigned to a district judge and the undersigned magistrate judge.  Both parties consented to the jurisdiction of the undersigned magistrate judge to conduct all further proceedings in the case.  Dkt. No. 40.

        On June 30, 2017, the parties filed a joint status report indicating that there were ongoing settlement discussions with exchange of financial information and the parties were moving quickly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                                  Date:   November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

to determine if settlement was possible to maximize judicial economy and limit the costs of litigation.  Dkt. No. 38.

On July 14, 2017, a scheduling conference was held.  Dkt. No. 44.  The Court referred the matter to the district's Mediation Panel.  Dkt. No. 45.  On November 14, 2017, a mediation was held before Phillip K. Cha.  Dkt. No. 50.  Mr. Cha indicated in his mediation report that the case fully settled.  *Id.*

On October 12, 2018, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.  Dkt. No. 57.  Telephonic status conferences were held on November 26, 2018, and December 11, 2018, and Plaintiff's counsel agreed to file an amended motion for preliminary approval.  Dkt. Nos. 60, 61.

On April 25, 2019, Plaintiff filed an Amended Unopposed Motion for Preliminary Approval of Class Action Settlement.  Dkt. No. 63.

On June 5, 2019, the Court held a telephonic hearing on the amended motion for preliminary approval and denied without prejudice the original motion for preliminary approval as superseded.  Dkt. No. 66.  The Court directed the parties to submit Defendant's financial documents for an *in camera* review and directed Plaintiff's counsel to file an amended notice and amended proposed order for preliminary approval.  *Id.*

On June 17, 2019, the Court granted the amended motion for preliminary approval of the class action settlement.  Dkt. No. 68.

On July 9, 2019, Defendant's counsel lodged Defendant's financial documents.

Plaintiff filed its first motion for final approval on October 2, 2019.  Dkt. No. 76.  An in-person hearing was held on October 30, 2019.  Dkt. No. 77.  The Court directed Plaintiff to file a status report regarding the Court's concerns.  *Id.*

Plaintiff filed its status report and requested until January 3, 2020 to provide further information.  Dkt. No. 78.  Plaintiff filed a further status report on January 14, 2020.  Dkt. No. 80.  Because Plaintiff represented that Plaintiff would file an amended motion for final approval, the Court denied the first motion for final approval without prejudice.  Dkt. No. 81.  The Court directed the parties to file an amended proposed notice for publication by September 25, 2020, directed a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                    Date:  November 4, 2022
Title:      Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

schedule for publishing the notice, and set deadlines for class members to submit claims and for Plaintiff to file an amended motion for final approval.  *Id.*

On November 4, 2020, the parties filed a joint status report with a proposed settlement notice.  Dkt. No. 83.  Because the proposed settlement notice did not comply with the September 18, 2020 order, the Court directed the parties to file an amended proposed notice.  Dkt. No. 84.

On April 27, 2021, the parties filed an amended proposed notice.  Dkt. No. 85.  The Court approved the notice, directed a schedule for publishing the notice, and set deadlines for class members to submit claims and for Plaintiff to file an amended motion for final approval.  Dkt. No. 86.  The Court granted two stipulations to reschedule notice.  Dkt. Nos. 88, 90.

On September 28, 2022, Plaintiff filed the instant Motion for Final Approval and Motion for Fees.  Dkt. No. 91.

### C.    The Settlement Agreement

The parties agreed to conditional certification for settlement purposes pursuant to Federal Rule of Civil Procedure 23(b)(2) ("Rule 23(b)(2)").  Boyamian Decl., Ex. 1 at 5.  The class is defined as: "All persons within the United States to whom Defendant sent or caused to be sent one or more Facsimile advertisements for marketing purposes between February 16, 2013 and up through the Preliminary Approval Date."  *Id.*

Defendant consented to an injunction, to be included in the judgment, prohibiting it from sending any "facsimile advertisements for marketing purposes unless each recipient has given prior express written consent" for four years after the effective date.  *Id.*  The effective date is defined as the latest of ten days from final approval if no objection is filed, the date on which the time for all appeals has passed if there are any objections, or, if any appeal is taken, the date on which any reviewing court issues a decision overruling any objection at issue on the appeal, the time for further appeal has expired, and the trial court has regained jurisdiction.  *Id.* at 2.

Defendant agreed to pay a gross settlement amount of $120,000 on a non-reversionary basis.  *Id.* at 5.  Defendant will pay the $120,000 over two years, with payment of $3,500 per month for six months followed by payment of $5,500 per month for 18 months.  *Id.* at 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 17-04609 RAO | Date: | November 4, 2022 |
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC | | |

Defendant agreed not to oppose any application by class counsel and Plaintiff seeking up to a $5,000 enhancement payment for Plaintiff and up to $40,000 for class counsel fees. *Id.* at 6.

For a class member to receive a share of the net settlement amount, the class member must sign and return a class notice. *Id.* at 7. Class members may request exclusion or object to the settlement. *Id.* at 7-8. Each class member who timely returns a class notice and does not opt out will receive an equal share of the net settlement amount. *Id.* at 8. The net settlement amount is the gross settlement amount less class counsel fees, class counsel costs, enhancement payment, and settlement administration costs. *Id.* at 3.

The settlement agreement includes a general release by all class members of claims existing at the time of execution of the agreement arising out of or relating to the fax advertisements at issue and a release under California Civil Code section 1542 by Plaintiff only. *Id.* at 8-9.

The settlement was amended once to increase the amount of potential settlement administration costs to $30,000. *Id.* at 17.

### D.    Notice to Class Members and Class Response

In the first motion for preliminary approval, the parties proposed providing notice to the class members by publication in "The Dental Trader." Dkt. No. 57 at 6. Plaintiff's counsel explained that The Dental Trader was a prominent journal with a circulation of approximately 32,700 covering dentists and dental groups. *Id.* At the November 26, 2018 telephonic hearing, the Court raised concerns with the parties' proposed method of service, including the use of a regional trade journal to provide notice to a nationwide class and providing notice by publication even though it appeared that individual notice could be provided by fax and was contemplated in the parties' settlement agreement. The parties agreed to confer regarding the Court's concerns about notice. At the December 11, 2018 telephonic hearing, the parties informed the Court that they were able to find a vendor who could provide notice by fax at a reasonable cost.

On June 17, 2019, the Court preliminarily approved the class action settlement. Dkt. No. 68. The Court approved the amended notice and directed notice by fax. *Id.* The Court directed Defendant to provide the claims administrator, Simpluris, Inc. ("Simpluris"), with a database of all class members and their fax numbers. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:    CV 17-04609 RAO                          Date:    November 4, 2022
Title:          Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

Simpluris received the list of 60,002 class members on June 25, 2019 and faxed notice to the numbers on the list on July 17, 2019. Dkt. No. 72 at 3; Reyes Decl. ¶¶ 6-7. On August 6, 2019, Simpluris informed Plaintiff's counsel that it was unable to get through to 18,888 of the 60,002 fax numbers. Dkt. No. 72 at 3.

On September 10, 2019, the parties filed a joint status report indicating that the initial list provided to Simpluris included all phone numbers that Defendant had attempted to send faxes to during the class period and not just those that Defendant had previously been able to reach. Dkt. No. 74 at 4. Defendant agreed to revise their class list to remove individuals and businesses who never received the advertisement challenged by Plaintiff. *Id.*

On September 26, 2019, Simpluris received email addresses for 397 class members whose fax numbers were deemed undeliverable and sent follow-up emails to those class members. Decl. of Norman Alcantara Regarding Notice and Settlement Administration ("Alcantara Decl.") ¶ 8, Dkt. No. 76-7; Reyes Decl. ¶ 8; Mot. for Final Approval at 1.

As of October 2, 2019, Simpluris received 2,258 valid claim forms, two requests for exclusion, and no objections. Alcantara Decl. ¶¶ 9-11.

At the October 30, 2019 hearing on the first motion for final approval, Plaintiff's counsel informed the Court that over 10,000 potential class members could not be reached by fax or email. Dkt. No. 77. Plaintiff's counsel proposed notifying the remaining class members through The Dental Trader, the publication initially proposed for notice by publication in the first motion for preliminary approval. *Id.*; *see also* Dkt. No. 57 at 6. The Court repeated its concern about using The Dental Trader and requested additional information. Dkt. No. 77.

On January 14, 2020, the parties filed a Joint Status Report which proposed using ADA News, a nationwide publication of the American Dental Association, to provide notice to the remaining class members. Dkt. No. 80. The Brand Report for the publication set forth that ADA News is circulated nationwide and reaches over 150,000 dentists. *Id.* at 7-9. The parties submitted a proposed settlement notice that would fit in the 1/8th page advertisement to make the notice cost-effective. *Id.*

On September 18, 2020, the Court approved notice by publication in ADA News. Dkt. No. 81. However, the proposed notice did not comply with Rule 23(c)(2)(B) because it failed to provide that class members could choose to enter an appearance, the time and manner for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 17-04609 RAO | Date: | November 4, 2022 |
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC | | |

requesting exclusion, and the binding effect of the settlement agreement. *Id.* The Court directed the parties to submit an amended proposed notice. *Id.*

On April 27, 2021, the parties filed an amended proposed notice for publication, Dkt. No. 85, which complied with the Court's September 18, 2020 order and Rule 23(c)(2)(B). The Court approved the notice and directed notice by publication in the ADA News via three consecutive issues. Dkt. No. 86.

In May, June, and July 2022, Plaintiff had the approved notice published in the ADA News. *See* Dkt. No. 90; Mot. for Final Approval at 1. At the close of the notice period for the notice by publication, Simpluris had received a total of 2,284 claim requests, two requests for exclusion, and no objections. Reyes Decl. ¶ 9-11.

## II.    AMENDED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Legal Standard

The Rule 23(a) prerequisites for a class action are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A class action may be maintained if Rule 23(a) is satisfied and one of the Rule 23(b) circumstances applies. Fed. R. Civ. P. 23(b). The Court may direct appropriate notice for a class certified under Rule 23(b)(2) and must direct "the best notice that is practicable under the circumstances" for any class certified under Rule 23(b)(3), with the notice including seven specific pieces of information. Fed. R. Civ. P. 23(c)(2).

A class action may be settled only with the district court's approval. Fed. R. Civ. P. 23(e). If a proposed settlement would bind class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Rule 23(e) imposes on district courts an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members."). Rule 23(e)(3) was amended in 2018 with a list of specific factors for the court to consider:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                              Date:   November 4, 2022
Title:          Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

(A) the class representatives and class counsel have adequately represented the
class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the
    class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of
    payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to formal class certification, a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)" applies. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Courts must scrutinize agreements for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 947. The *Bluetooth* panel described three signs of collusion: (1) counsel receives a disproportionate distribution or the class receives no monetary distribution; (2) a "clear sailing" arrangement in which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when fees not awarded revert back to defendants rather than to the class fund. *Id.* District courts must apply these factors in reviewing settlements struck before class certification. *Briseño*, 998 F.3d at 1023.

Prior to the 2018 Amendment, the Ninth Circuit instructed courts to consider the following non-exhaustive list of factors in approving a class action settlement (often referred to as the *Hanlon* or *Staton* factors): (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Id.* (citing to *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). "[M]any of the *Staton* factors fall within the ambit of the revised Rule 23(e)." *Briseño*, 998 F.3d at 1025-26. The Advisory Committee notes to the 2018 Amendment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                                    Date:   November 4, 2022

Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

explain that "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. The Ninth Circuit recently confirmed that district courts must still explore these factors "comprehensively." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

Thus, in determining whether the settlement is fair, reasonable, and adequate under Rule 23(e)(2), the Court will first address the considerations in the revised rule, which incorporate many of the *Hanlon/Staton* factors (hereinafter, "*Hanlon* factors"). *See Freeze v. PVH Corp.*, No. CV 19-1694 PSG (Ex), 2021 WL 2953151, at *3 n.2 (C.D. Cal. Jan. 7, 2021) (applying Rule 23(e)(2) factors "through the lens of the Ninth Circuit's *Hanlon/Staton* factors and existing relevant precedent"). In considering the proposed award of attorneys' fees, the Court will apply the *Bluetooth/Briseño* factors (hereinafter, "*Bluetooth* factors"). *See Briseño*, 998 F.3d at 1024 ("[T]he new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members."). The Court will then address the remaining *Hanlon* factors.

**B.      Discussion**

1.      Rule 23(a) prerequisites

The Court first finds that the Rule 23(a) prerequisites are met.

The class, which is composed of approximately 60,000 members, is so numerous that joinder is impracticable. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (affirming district court's finding of numerosity where there were 262 potential class members); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

Because the class members' claims all arise out of the alleged use of fax advertisements by Defendant in violation of the TCPA, there are common questions of law and fact, including whether the faxes constituted unsolicited advertisements and whether they contained compliant opt-out notices. And because the same alleged TCPA violation is at issue for the class representative and the class members, claims and defenses with respect to Plaintiff are typical of those for the class. *See Thomas v. Dun and Bradstreet Credibility Corp.*, No. CV 15-03194 BRO (GJSx), 2017 WL 11633508, at *7-8 (C.D. Cal. Mar. 22, 2017) (finding commonality and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: | CV 17-04609 RAO        Date:    November 4, 2022 |
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC |

typicality in TCPA class action where all class members claimed that the defendant violated the TCPA by calling them on a cellphone number using an automated dialing system without their permission and the plaintiff did not pursue any legal claims that were unique or not applicable to the class as a whole).

Finally, the Court finds that Plaintiff and his counsel will fairly and adequately protect the interests of the class. Counsel are qualified to represent the class, there are no apparent conflicts of interest, and Plaintiff and Plaintiff's counsel have vigorously prosecuted the action on behalf of the class and will continue to do so. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (providing that to determine adequacy, courts must resolve whether plaintiffs and counsel have any conflicts of interest with class members and whether they will prosecute the action vigorously on behalf of the class). Accordingly, the Rule 23(a) prerequisites are met.

### 2.    Certification of the class

The Court previously certified the class preliminarily for settlement purposes, *see* Dkt. No. 68, and does so for final approval purposes. The certified class is as follows: all persons within the United States to whom Defendant sent or caused to be sent one or more facsimile advertisements for marketing purposes from February 16, 2013 to June 17, 2019.

Although the parties stipulated to certification under Rule 23(b)(2), because the settlement involves monetary relief and releases claims for damages, the Court has directed the parties to apply procedural protections required for classes certified under Rule 23(b)(3) such as providing class members notice and the opportunity to opt out. The Court also finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy under Rule 23(b)(3).

### 3.    Notice under Rule 23(c)(2)

As set forth above in Section I.D, the Court has directed notice by two methods. The Court initially raised concerns with notice by publication and the parties agreed to provide individualized notice by fax. The Court directed notice by fax, with follow-up by email for those class members who could not be reached by fax and for whom Defendant could provide an email address. When counsel informed the Court that approximately 10,000 class members could not be reached by fax or email, the Court directed notice by publication in a national trade journal in three consecutive issues. The Court approved the notice sent by fax and email and the separate notice published in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 17-04609 RAO | Date: | November 4, 2022 |
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC | | |

the dental newsletter as compliant with Rule 23(c)(2)(B). The Court finds that this constitutes appropriate notice under Rule 23(c)(2)(A) and is the best notice practicable under the circumstances under Rule 23(c)(2)(B). The notices also complied with Rule 23(e)(1).

 4.  Fairness

 The parties seek to release Defendant from class members' TCPA claims for damages, and class members are bound unless they filed a request to be excluded. Boyamian Decl., Ex. 1 at 7-9. Dkt. No. 76. Thus, the Court applies the Rule 23(e)(2) factors. *See* Fed. R. Civ. P. 23(e)(2).

 a.  *Rule 23(e)(2) factors (A) and (B): adequate representation by the class representative and class counsel and negotiation at arm's length*

 The Advisory Committee Note to the 2018 Amendment groups these two factors as "'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. The "focus . . . is on the actual performance of counsel acting on behalf of the class." *Id.* The "nature and amount of discovery in this or other cases, or the actual outcomes of other cases" are relevant considerations. *Id.* "[T]he involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether they were conducted in a manner that would protect and further the class interests." *Id.*

 The Court first discusses *Hanlon* factor 6, the experience and views of counsel. As indicated in their declarations, Plaintiff's counsel have decades of experience in class action litigation and view the settlement as a positive result in light of the inherent difficulties of such cases. *See* Boyamian Decl. ¶¶ 3-6 (setting forth practice as attorney for over ten years, including on a number of class action cases in employment law); Falvey Decl. ¶¶ 3-8 (setting forth practice as attorney for over 40 years, including as lead counsel in numerous employment cases).

 As to the actual performance of counsel, the Court will consider *Hanlon* factor 5, the extent of discovery completed and the stage of the proceedings. "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class Counsel's] familiarity with the case and of Plaintiffs having enough information to make informed decisions." *Jimenez v. Allstate Ins. Co.*, No. 10-cv-08486-JAK (FFMx), 2020 WL 11624498, at *8 (C.D. Cal. May 1, 2020) (citation omitted). As long as the parties have sufficient information to make an informed decision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                              Date:    November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Class counsel represent that they conducted a thorough investigation into the relevant facts and legal claims, including the suitability of Plaintiff's claims for class treatment and the adequacy of Plaintiff to represent the proposed class. Mot. for Fees at 10; Boyamian Decl. ¶ 16. As part of mediation, class counsel obtained voluminous records from Defendant on its financial condition and corresponded with an expert on what Defendant could realistically pay. Mot. for Fees at 11; Boyamian Decl. ¶ 17. Thus, although little formal discovery took place, class counsel conducted a sufficient investigation to come to an informed decision for settlement. *See Glass v. UBS Fin. Servs., Inc.*, CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that informal discovery prior to settling supports approving the class action settlement).

Additionally, the parties participated in a full day of mediation before a neutral, Phillip S. Cha, on November 14, 2017. Dkt. No. 50; Boyamian Decl. ¶ 18. This supports that the parties conducted negotiations at arm's length.

In sum, the Court finds that these procedural concerns weigh in favor of approval.

> b.    *Rule 23(e)(2) factors (C) and (D): adequate relief for the class and equitable treatment of class members*

The Advisory Committee Note to the 2018 Amendment groups these two factors as the "substantive" review of the proposed settlement, with "[t]he relief that the settlement is expected to provide to class members" as "a central concern." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

(i) Costs, risks, and delay of trial and appeal

Here, the Court considers *Hanlon* factors 1, 2, and 3: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial.

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 488 (E.D. Cal. 2010). "[U]nless the settlement is clearly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                                Date:   November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiff explains that further litigation carried numerous risks and obstacles, including the risk that the unsolicited fax advertisements could have been construed as merely informational, and that the Court could have found that the advertisements had valid opt-out clauses.  Mot. for Final Approval at 9; Boyamian Decl. ¶¶ 12-13.  There was also the risk that class action status could not be maintained if different class members responded or reacted differently to the facsimile advertisements or to the opt-out clause.  Mot. for Final Approval at 9.

Additionally, there was a major risk that even if Plaintiff and the class members won at trial, the costs of litigation would have rendered Defendant insolvent, leading to minimal or no payments for any of the class members.  Mot. for Final Approval at 10; Boyamian Decl. ¶ 14.  This is relevant in approving a class action settlement.  *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1295 (9th Cir. 1992) ("a settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement").  Class counsel confirmed Defendant's representations of its financial condition through reviewing detailed financial records, including verified corporate tax returns, profit and loss statements, and bank account information.  Boyamian Decl. ¶ 14.  There was also no insurance available to pay any judgment.  *Id.*

The Court required Defendant to lodge its financial documents for an *in camera* review.  *See* Dkt. No. 66.  The Court has reviewed the documents and finds that they confirm the parties' representations that Defendant had been operating at a loss at the time it entered the settlement.  Defendant's financial condition greatly increased the risk of further litigation.  *See Cavazos v. Salas Concrete, Inc.*, 1:19-cv-00062-DAD-EPG, 2022 WL 2918361, at *5 (E.D. Cal. July 25, 2022) (finding relevant to *Hanlon* factor 2 that the class may not recover even if the plaintiff prevailed at trial because of the defendant's precarious financial condition).

In light of these risks, this factor weighs in favor of approval of the class action settlement.

> (ii) Effectiveness of proposed method of distributing relief to the class, including the method of processing class-member claims

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  Fed. R. Civ. P. 23(e)(2) Advisory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                              Date:   November 4, 2022

Title:      Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

Committee's Note to 2018 Amendment.  Here, requiring members to return a class notice to receive a distribution strikes the correct balance of deterring unjustified claims while not being unduly demanding.  Claimants only had to verify ownership of the fax number during the class period, but did not have to possess the junk fax at issue or recall that he/she received the fax at issue.  Mot. for Final Approval at 7; Boyamian Decl., Ex. 1 at 7.  Checks will be disbursed to those class members who returned a class notice with the proper information.  This factor weighs in favor of approval of the settlement.

                    (iii) Terms of proposed award of attorneys' fees, including timing
                    of payment

        The Court applies the *Bluetooth* factors as instructed by the Ninth Circuit.  As to the first *Bluetooth* factor, there is a monetary distribution in addition to injunctive relief, which weighs against a finding of collusion.  However, the Court must also consider whether counsel receives a disproportionate distribution.  Counsel requests 33% of the fund in fees, or $40,000.  The payout to the class after deducting the requested attorneys' fees, the requested enhancement award, actual litigation costs, and actual settlement administration costs would be $42,407.10.[1]  The requested fees are 94% of the class member payout.  This is in between ratios or percentages that courts consider troubling and those that courts deem acceptable and non-collusive.  *See, e.g.*, *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2022) (finding a 4:1 ratio of requested fees to actual payout troubling); *Chen v. Chase Bank USA, N.A.*, No. 19-cv-01082-JSC, 2020 WL 3432644, at *8 (N.D. Cal. June 23, 2020) (noting potential red flag where request for fees was nearly the same as class member payout); *Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2020 WL 1557428, at *8 (N.D. Cal. Apr. 1, 2020) (not finding collusion where class counsel's request for fees amounted to about 52% of the total payment to the class).  As to the second *Bluetooth* factor, the settlement agreement includes a clear-sailing provision that Defendant agrees not to oppose an application by Plaintiff and class counsel for class counsel fees up to $40,000.  Boyamian Decl., Ex. 1 at 6.  As to the third *Bluetooth* factor, the settlement provides that the gross settlement amount of $120,000, which includes class counsel fees, will be paid on a "non-reversionary basis."  Boyamian Decl., Ex. 1 at 5.

---

[1] For reasons explained below in Section III.B and III.D, the Court deducts $22,000 in settlement administration costs and $10,592.90 in litigation costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:    CV 17-04609 RAO                          Date:    November 4, 2022
Title:          Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

Thus, the second warning sign of collusion clearly exists and the third warning sign clearly does not exist.  The first potential warning sign is somewhere in between.  Given the potential for collusion, the Court has carefully reviewed the requested fees in the context of the entire settlement and the various risks leading to the settlement.  While the proposed amount of fees is close to the total payout to the class members, this is not a case where there is no monetary relief.  And the requested fees still fall below the actual payout to the class members.  *Cf. Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019) (finding cash allocation where more money went to attorneys' fees than would be distributed to class members was not "per se problematic," but was reason for increased scrutiny).   Additionally, Defendant's financial condition is again an important consideration.  Plaintiff's counsel had to negotiate a settlement amount that Defendant could pay so that class members could receive any monetary relief at all.  And because the requested amount of fees is far below the lodestar for counsel's work, the agreement does not provide any windfall to Plaintiff's counsel.  Finally, as noted above, the settlement terms were negotiated before a neutral mediator.  Despite the existence of one or two warning signs, this is not an instance where Plaintiff's counsel "bargained away something of value to the class."  *Bluetooth*, 654 F.3d at 948; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015) (finding no collusion "[n]otwithstanding the existence of two of the three warning signs" because the settlement adequately satisfied the class members' claims, reflected in part by the lack of objections, and parties engaged in settlement talks overseen by a neutral mediator).  The Court concludes that the proposed award of attorneys' fees does not support a finding of collusion and this weighs in favor of approval of the settlement.

(iv) Settlement agreement

The parties have submitted the settlement agreement and amendment as required under Rule 23(e)(3).  Boyamian Decl., Ex. 1.

Here, the Court will consider *Hanlon* factor 4, the amount offered in settlement.  The total amount for this settlement for a class of over 60,000 members is $120,000.  The payout to the class under the settlement agreement would be $42,407.10.[2]  Divided by 2,284 claimants, the per claimant payout would be $18.57.  This amount is quite low compared to statutory damages of

---

[2] Because the Court reduces the award for attorneys' fees and the incentive award as set forth below in Section II, the actual payout will be slightly higher.  But in considering the terms of the settlement agreement, the Court uses the requested fees and incentive award.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                                Date:   November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

$500 for each negligent violation and $1,500 for each willful violation under the TCPA.  *See* 47 U.S.C. § 227(b)(3)(B)-(C).  However, the per claimant amount is within the range of other class action settlements under the TCPA that courts have approved.  *See, e.g., Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (collecting cases and finding $13.75 payment per class member was on the low end of TCPA settlements, but approving the settlement in light of the large number of claims and higher than average claims rate); *Franklin v. Wells Fargo Bank, N.A.*, No.: 14cv2349-MMA (BGS), 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (approving TCPA class settlement where each claimant received approximately $71).  The Court also finds that the amount is fair and reasonable in light of Defendant's financial condition.  *See Cavazos*, 2022 WL 2918361, at *6 (finding that although the proposed settlement amount was "below the general range of percentage recoveries that California courts . . . have found to be reasonable," the amount was not unreasonable because a larger recovery would likely not be possible due to the defendant's financial condition).  Finally, the injunctive relief adds non-monetary value to the settlement for all class members.

The Court briefly addresses the payment plan over two years.  As noted throughout this order, Defendant's financial condition was a primary concern in negotiating the settlement.  At the hearing, the Court asked class counsel what action they would take if Defendant defaulted on the payment plan.  While the parties do not expect default, class counsel explained that they would make efforts to collect payment.  Additionally, all counsel agreed that the settlement class would be entitled to any funds that were collected, even if full collection became unfeasible.  The Court is satisfied that the payment plan is in the best interests of the class and class counsel will adequately pursue payment if Defendant defaults.

The Court has considered all terms of the settlement agreement and finds that they support approval of the settlement as fair, reasonable, and adequate.

(v)    *Equitable treatment of class members*

This factor "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No.: | CV 17-04609 RAO | Date: | November 4, 2022 |
|---|---|---|---|
| Title: | Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC | | |

Here, each member had to submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair. Because Plaintiff expended efforts in bringing and pursuing this case through settlement, Plaintiff is entitled to a higher award. The Court finds that the settlement will treat class members equitably relative to each other.

          c.     *Other* Hanlon *factors*

The Court addresses the remaining *Hanlon* factors that were not addressed above.

*Hanlon* factor 7 is neutral because there is no governmental participant. The eighth factor is the reaction of class members. The class is approximately 60,000 members. Reyes Decl. ¶ 6. Simpluris has received 2,284 valid claim forms, two requests for exclusion, and no objections. Reyes Decl. ¶¶ 9-11. No objectors appeared at the final fairness hearing. The class has responded positively to the settlement, favoring approval. *See Nat'l Rural Telecomm.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

In sum, the Court has considered the Rule 23(e)(2) factors, the *Bluetooth* factors, and the *Hanlon* factors. The Court finds that the settlement is fair, reasonable, and adequate and GRANTS the Motion for Final Approval.

## III.    AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

    **A.    Attorneys' Fees**

Class counsel requests an award of attorneys' fees of $40,000, which amounts to one-third of the settlement fund. Mot. for Fees at 3.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:    CV 17-04609 RAO                        Date:    November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

1.        Legal Standard

Under Rule 23(h), the Court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). The claim for an award must be made by motion. Fed. R. Civ. P. 23(h)(1).

The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963. The district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). For the percentage-of-the-fund method, the benchmark rate in the Ninth Circuit is 25%. *Id.* at 1047-48; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.").

Courts may consider several factors in assessing a request for attorneys' fees under the percentage-of-recovery method, including: "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (citing *Vizcaino*, 290 F.3d at 1047-50). Courts may "cross-check" the percentage-of-recovery figure against a lodestar calculation. *Id.* at 955.

2.        Discussion

This is a common fund case. The Court chooses to award fees under the percentage-of-recovery method. Because counsel requests 33% of the fund, the Court considers whether an upward departure from the 25% benchmark is appropriate.

a.        *Reasonableness of percentage*

In considering the various factors set forth by the Ninth Circuit, the Court finds that a modest upward departure from the 25% benchmark is warranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 17-04609 RAO                                Date:  November 4, 2022
Title:       Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

The result obtained by counsel is good, but not exceptional.  While the amount of monetary relief may be fair in light of Defendant's financial condition, it is on the lower end of TCPA settlement awards.  *See Thomas*, 2017 WL 11633508, at *19 (finding recovery of $100 per claimant in TCPA settlement was not "particularly outstanding when compared [to] other similar cases").  And while there is value to the injunctive relief, the prohibition on faxing advertisements is only for four years and it is not clear whether Defendant has continued to use fax advertisements or would continue to do so in the absence of injunctive relief.  The Court declines to assign a specific value to the injunctive relief but finds that this supports a slight upward departure.

As to the burdens experienced by class counsel, though counsel appears to be experienced and skillful, there was not a lot of activity in this case because it settled at a very early stage. Counsel did not have to propound or respond to any formal written discovery, and no depositions were taken.  The only motion filed prior to settlement was regarding venue, not on the merits or adequacy of the claims.  The issues are also not particularly complex and counsel do not point to any novel issues of law.  *See Lalli v. First Team Real Estate-Orange Cnty.*, No. 8:20-cv-00027-JWH-ADS, 2022 WL 8207530, at *12 (C.D. Cal. Sept. 6, 2022) ("The TCPA is not a novel statute, and class action lawsuits arising under it are not new.").  While the Court required counsel to re-submit both the motion for preliminary approval and the motion for final approval, the Court's concerns on both occasions focused on the discrete procedural issue of notice, not a complex legal issue.  Overall, the burden on counsel appears to be less than average.  This weighs against a large upward departure.

Other factors weigh in favor of a slight upward departure.  Counsel prosecuted the matter on a contingent basis, and there was the additional risk that Defendant would not be able to pay anything even if Plaintiff was the prevailing party.  The class has reacted positively to the settlement.  Finally, slight upward departures have been granted in other TCPA cases.  *See, e.g.*, *Thomas*, 2017 WL 11633508, at *22 (declining to award requested 30% in fees but finding slight upward adjustment of benchmark to 27% was appropriate); *Izor v. Abacus Data Sys., Inc.*, No. 19-cv-01057-HSG, 2020 WL 12597674, at *10 (N.D. Cal. Dec. 21, 2020) (declining to award fees amounting to one-third of the fund but awarding 30%).

Class counsel argue that their requested fee award of one-third of the fund is typical of class actions, but the cases cited by counsel awarding one-third of the fund are either securities or breach of fiduciary duty class actions, not TCPA cases.  *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997); *In re Mego Fin. Corp. Sec. Litig.,* 213

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:    CV 17-04609 RAO                    Date:    November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

F.3d 457 (9th Cir. 2000); *In re Heritage Bond Litig.,* No. 02-ML-1475-DT, 2005 WL 1599403
(C.D. Cal. June 10, 2005); *In re Public Service Co.*, No. 91-0536M, 1992 WL 278452 (S.D. Cal.
July 28, 1992); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G (CM), 1991 WL
427893 (S.D. Cal. May 6, 1991).  Thus, the Court is not persuaded that an upward departure to
33.3% of the fund is appropriate here.

Weighing these considerations, the Court finds that a modest upward departure is
warranted, but not to the extent requested by counsel.  The Court finds that 30% of the fund, or
$36,000, is a reasonable attorneys' fees award for this class action settlement.

b.      *Lodestar cross-check*

Counsel represents that the total lodestar is $262,227.07.  The Court has concerns about
the need and use of four different law firms and five attorneys on what appears to be a
straightforward TCPA class action case which ended at an early stage in settlement.  Not all
counsel have provided a breakdown of their work for the Court to evaluate whether there were
duplicative efforts.  *See, e.g.*, Falvey Decl. ¶ 9 (setting forth lodestar of $75,600 for 84 hours of
work at hourly rate of $900 without an explanation of what work was done).  And for some
attorneys, the Court does not have the information it needs to determine whether the hourly rates
are reasonable.  *See* Jardini Decl. ¶¶ 3-7 & Ex. 1 (providing lodestar and details of work performed
but no information on years of experience of attorneys or their hourly rates to justify a blended
hourly rate of $778); Rinka Decl. ¶ 3 (setting forth lodestar and summary of work performed but
no explanation of experience to justify hourly rate of $600).

However, the Court need not address these concerns in further detail because the amount
awarded will be far less than the lodestar.  Taking only Mr. Boyamian's lodestar of $69,600 for
96 hours of work at his hourly rate of $725, the amount awarded of $36,000 is far less than the
lodestar.[3]  The Court need not determine the exact lodestar because it is clear that the total lodestar
would exceed the amount of fees awarded, supporting the reasonableness of the award.  *See Retina
Assoc. Medical Group, Inc. v. Keeler Instruments, Inc.*, No.: SACV 18-01358-CJC (DFMx), 2019
WL 13043767, at *6 (C.D. Cal. Dec. 13, 2019) (finding lodestar cross-check supported
reasonableness of requested fee award where percentage award was substantially less than the

---

[3] The Court uses Mr. Boyamian's lodestar by way of example because he has provided the most
combined information regarding his experience as an attorney and his work on this case.  This is
not meant to imply that work by any other attorney was minimal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                         Date:   November 4, 2022

Title:       Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

lodestar fee). And because the amount is lower than the lodestar, the Court need not conduct any further analysis to determine if an upward multiplier is reasonable. *See Lalli*, 2022 WL 8207530, at \*14 (concluding separate analysis regarding an upward multiplier was not necessary because request for fees came below lodestar figure).

The lodestar cross-check confirms the reasonableness of the $36,000 award.

**B.      Litigation Costs**

Class counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting this case. *Couser*, 125 F. Supp. 3d at 1049.

Here, counsel seek reimbursement of $10,667.34 in litigation costs. Mot. for Fees at 15. This includes out-of-pocket costs for mediation fees, filing fees, postage, messenger fees, publication notice costs, printing, and copying. *Id.* at 15-16. These are itemized in counsel's declarations. *See* Boyamian Decl. ¶ 20 & Ex. 2 (requesting $4,854.03 in costs); Jardini Decl. ¶ 8 & Ex. 2 (requesting $4,667.94 in costs); Falvey Decl. ¶ 10 & Ex. 1 (requesting $1,070.93 in costs).

The Court has reviewed the request for costs and supporting declarations and exhibits. At the hearing, the Court noted that it appeared that there was double-counting of the costs for the notice by publication in ADA News because both Boyamian Law and Knapp, Petersen & Clarke (KPC) include $4,590 for the placement of the class notice in the ADA publication. Class counsel explained that the two firms split this cost so there was no double-counting, and agreed to submit the invoices for the ADA News publication. On November 2, 2022, class counsel submitted the invoices and provided an explanation for the splitting of costs in a declaration by counsel. Dkt. No. 94. The Court has reviewed the declaration and invoices and will award the full $9,180 for the ADA News publication. There does appear to be one minor discrepancy remaining between the requested costs and supporting declarations. Mr. Boyamian has included $74.44 in costs incurred by The Rinka Law Firm. Boyamian Decl. ¶ 20. However, Mr. Rinka does not request reimbursement of any amount in costs. *See* Rinka Decl. ¶ 4. Thus, the Court reduces the total requested by $74.44 and awards $10,592.90 in class counsel costs.

**C.      Incentive Award**

Plaintiff requests an enhancement payment of $5,000. Mot. for Fees at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                              Date:  November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

1.        Legal Standard

"[N]amed plaintiffs are eligible for reasonable incentive payments."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "The district court must evaluate their awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id.* (citation and quotation marks omitted).  The Court may consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment" in determining whether a proposed incentive award is excessive.  *Id.*  Additional factors for consideration include: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation[;] and[] 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

2.        Discussion

Here, Plaintiff has spent at least 15 hours assisting his attorneys and the class.  Vu Decl. ¶ 6.  This includes discussion with his attorneys about his claims, searching for and providing the faxes he received from Defendant, and discussing the proposed settlement with his attorneys.  *Id.* The settlement will benefit the class both through injunctive relief for the entire class and a monetary award for those who filed claims.  Additionally, Plaintiff has agreed to a broader release of claims than the rest of the class.  As such, the Court will award Plaintiff with an incentive payment.  However, for the reasons below, an award of $5,000 is not appropriate here.

Because the gross settlement amount in this case is low due to Defendant's financial condition, Plaintiff would receive 4.17% of the fund if the Court granted the requested $5,000 incentive award.   The Court is not aware of any analogous case where a single class representative's incentive award amounted to over 4% of the total fund.  The highest percentage seen by the Court is 3.33%.  In *Vasquez*, while the class representatives received $5,000 enhancement awards amounting to 3.33% of the fund, there were only 56 claimants and each claimant would receive $2,600 on average.  266 F.R.D. at 492-93.  Thus, while the incentive award was a significant percent of the total fund, it was less than two times the average payout for other class members.  Here, the class member payout will be approximately $20.32 if Plaintiff is awarded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                          Date:   November 4, 2022
Title:      Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

---

$5,000. Plaintiff's incentive award would be approximately 246 times greater than the claimant payout, distinguishing this case from *Vasquez*. While courts have generally found that $5,000 incentive payments are reasonable, such payments are usually a very small percentage of the total settlement fund or more proportionate to the average claimant's recovery. *See, e.g.*, *Judson v. Goldco Direct, LLC*, No. CV 19-6798 PSG (PLAx), 2021 WL 8462049, at *11 (C.D. Cal. June 11, 2021) (approving incentive award of $5,000 in TCPA case where the gross settlement amount was $1.5 million and the incentive award was roughly 5.9 times the average recovery); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 457, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement).

The amount of time expended by Plaintiff is also much less than typically seen in class action settlements because the case settled at an early stage. Plaintiff has spent 15 hours on the case and has not had to respond to any written discovery or sit for a deposition. Incentive awards of $5,000 are often granted when named plaintiffs have had to spend more time and effort in prosecuting their cases. *See, e.g.*, *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3616638, at *4, 11 (N.D. Cal. June 26, 2017) (awarding $5,000 where plaintiff had responded to written discovery, produced documents, and sat for a deposition); *see also Ross v. Bar None Enters.*, No. 2:13-cv-00234-KJM-KJN, 2015 WL 1046117 at *11 (E.D. Cal. Mar. 10, 2015) (approving $5,000 incentive award where over a 2-year time period, named plaintiff traveled over 120 miles and spent 29 hours working on the case); *Knight v. Red Door Salons, Inc.,* No. 08–01520-SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (awarding $5,000 for named plaintiffs expending 40-50 hours each to help recover $500,000).

The TCPA cases cited by Plaintiff are distinguishable because of the work done by the class representatives and the size of the total funds. In *Satterfield v. Simon & Schuster, Inc.*, No. 4:06-cv-02893-CW (N.D. Cal., filed April 28, 2006), a settlement with a total fund of $10 million, the one representative who received $20,000 appeared for a deposition, attended a first mediation, and aided with several sets of discovery. Pls.' Mot. for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses and Incentive Awards at 1, 20, No. 4:06-cv-02893-CW, ECF No. 123 (N.D. Cal., filed July 20, 2010). Her information was also made public in media outlets across the country and appeared as the subject of a law review article. *Id.* The two class representatives who received $5,000 each participated in answering lengthy discovery, preparing amended pleadings, and aiding in preparation for mediation. *See id.* at 20-21. In *Adams v. AllianceOne, Inc.*, Civil No. 3:08-cv-0248-JAH-WVG, 2012 WL 12952683 (S.D. Cal. Sept. 28, 2012), the total settlement fund was $9 million. Plaintiffs' counsel represented that the class

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 17-04609 RAO                                Date:   November 4, 2022
Title:        Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

representative who received $5,000 provided discovery responses and prepared for her deposition, while those who received $2,500 were ready and expected to participate in similar efforts and reviewed and approved the proposed settlement terms. Mem. of P. & A. in Support of Pls.' Mot. for Fees & Costs at 24, Civil No. 3:08-cv-0248-JAH-WVG, ECF No. 115-1 (S.D. Cal., filed July 9, 2012). Thus, these cases support that a $5,000 incentive award for Plaintiff in this action is too high.

The Court awards Plaintiff a $1,500 service award. This is a reasonable incentive award and is within the range of service awards in TCPA cases. *See, e.g.*, *Franklin*, 2016 WL 402249, at *7 (approving $1,500 reward in TCPA case with $71.16 per member payout); *Couser*, 125 F. Supp. 3d at 1050 (approving $1,500 reward in TCPA case with total fund of over $8 million and individual class member payment of $13.75); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *10 (N.D. Cal. Apr. 15, 2015) (approving $2,000 incentive awards in TCPA class action settlement with over $3 million gross fund and individual payout of approximately $151); *Izor*, 2020 WL 12597674, at *11 (finding requested $5,000 award was substantially disproportionate to class members' anticipated $400 recovery and reducing to $2,500). A $1,500 award would amount to 1.25% of the total fund and the per-claimant payout would be approximately $21.85, making Plaintiff's incentive award approximately 69 times the payout for the other class members.

At the hearing, counsel indicated a higher award is justified by the number of years this case has been pending. However, Plaintiff's declaration only describes his work on the case through July 2019 and there is no evidence before the Court that Plaintiff has had to assist his counsel after that date. *See generally* Vu Decl.

While an incentive award should not be viewed as a salary or hourly wage, calculating the effective hourly rate of an incentive award can be a useful check on reasonableness. For example, in *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6-7 (N.D. Cal. Dec. 3, 2012), the court cut an incentive award from $25,000 to $5,000. The court divided the $5,000 award by the 65 hours spent by the plaintiff and found that the hourly rate of $76.92 would still compensate the plaintiff "handsomely for her time." *Id.* at *7. Here, 15 hours of work for the reduced $1,500 award amounts to an hourly rate of $100, which appears reasonable.

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  CV 17-04609 RAO                           Date:  November 4, 2022
Title:     Hung V. Vu, D.D.S., A Professional Dental Corp. v. I Care Credit, LLC

### D.     Settlement Administration Costs

The claims administrator in this action is Simpluris.  According to Evelin Reyes, a Case
Manager at Simpluris, Simpluris' total costs for services in connection with the administration of
this settlement are $22,000.  Reyes Decl. ¶¶ 1, 13 & Ex. B.  Simpluris' work includes: faxing
the notice packets in this action to the 60,002 class members and emailing notice packets to 397 class
members whose fax numbers were deemed undeliverable; establishing a toll-free phone number
for inquiries from class members and handling such inquiries; computing the amount of settlement
payments and taxes; and issuing and mailing settlement checks.  *Id.* ¶¶ 3-8, 13.  The Court finds
that these claims administration costs are reasonable.

The Court notes a discrepancy between the declaration of the case manager and the Motion
for Fees.  Class counsel requests up to $30,000 for administration costs, explaining that the $22,000
"bid is largely an estimate as it [sic] wholly contingent upon the participation rate of qualified
Class Members."  Mot. for Fees at 13.  However, the case manager states as of September 28, 2022
that the total costs are $22,000 and this includes anticipated future costs for completion of the
administration.  Reyes Decl. ¶ 13.  At the time of the declaration, the case manager understood the
number of claimants would be 2,284.  *Id.* ¶ 9.  It appears that the $22,000 administration costs take
into account the participation rate of the class.  Consistent with the declaration of the case manager,
the Court awards $22,000 in claims administration costs incurred by Simpluris.

## IV.    CONCLUSION

Plaintiff's Motion for Final Approval is GRANTED.  Plaintiff's Motion for Fees is
GRANTED-IN-PART.  A judgment shall issue concurrently.

**IT IS SO ORDERED.**

                                                              _____ : _____
                                         Initials of Preparer _____ dl _____